IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AIAH MOMOI GBONDO, | : | CIVIL NO. 1:CV-11-1016 |
| Petitioner, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| ATTORNEY GENERAL OF THE | : | |
| UNITED STATES, et al. | : | |

**MEMORANDUM**

Aiah Momoi Gbondo, ("Gbondo"), presently a detainee of the Bureau of Immigration and Customs Enforcement ("ICE") confined at the Clinton County Prison, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on May 31, 2011. (Doc. No. 1.) He has paid the required filing fee in this matter. Following a preliminary review of the petition, see R. Governing § 2254 Cases R. 4 (applicable to petitions under 28 U.S.C. § 2241 in the discretion of the court), it is concluded that the petition will be referred to ICE as a request for review under 8 C.F.R. § 241.13.

**I.     Background**

Gbondo states that he is a native and citizen of Sierra Leone. He states that he first entered the United States on September 21, 2001 pursuant to a visa. He states that he "was in the process" of having his status adjusted to lawful permanent resident when he got arrested. (Doc. No. 1 at 4.) He further states that he was convicted on May 11, 2006, for the federal offense of bank fraud in Greenbelt, Maryland. He was sentenced to a term of imprisonment of a minimum of 61 months. He was thereafter taken into custody by ICE on October 14, 2010, following service of 5 years and 1 month of his criminal sentence. He was ordered removed from the United States by an immigration judge on December 6, 2006. He states that he received a

review of his custody status on February 10, 2011, and it was determined that he would not be released from ICE custody. (Id., Ex. A at 16.) In the Notice of Decision to Continue Detention he was informed that if he has not been released or removed from the United States within three (3) months of the date of the Notice, jurisdiction of the custody decision in his case will be transferred to the Headquarters Case Management Unit (HQCMU), and that the HQCMU will make a final determination regarding his custody.[1] (Id.)

In the instant petition he complains about his "prolonged and continuing detention" by ICE. He seeks the issuance of a writ of habeas corpus ordering his immediate release under reasonable conditions of supervision or, in the alternative, a hearing before an impartial adjudicator wherein Respondents are made to justify his continued detention. He argues that he is not a flight risk and continues to be detained without a custody hearing. Specifically, he states that although his Notice to Continue Detention issued in February of 2011 states that he would receive a custody review by the HQCMU within three (3) months, and although he wrote a letter to the HQCMU requesting a review, that he has received no response. (Doc. No. 1 at 4, 16 and 18.) Based on the foregoing, he seeks to be released from ICE detention on supervision or afforded a custody review.

**II.     Discussion**

Detention, release, and removal of aliens ordered removed is governed by the provisions of 8 U.S.C. § 1231. Under § 1231(a), the Attorney General has ninety days to remove an alien from the United States after his order of removal, during which time detention is mandatory.

---

[1] The HQCMU is on the same administrative level and performs the same custody reviews as the Headquarters Post Order Detention Unit ("HQPDU"). See Tung Thanh Hoang v. Decker, Civil No. 3-CV-08-1748, 2008 WL 4793734, *3 (M.D. Pa. Oct. 31, 2008)(Vanaskie, J.).

Section 1231(a)(1)(B) provides the following:

> The removal period begins to run on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if the court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231. At the conclusion of the ninety-day period, the alien may be held in continued detention, or may be released under continued supervision. 8 U.S.C. §§ 1231(a)(3) & (6). The statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." Zadvydas v. Davis, 533 U.S. 678, 689 (2001). "Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. To establish uniformity in the federal courts, a period of six months was recognized as a "presumptively reasonable period of detention." Id. at 701.

Following Zadvydas, regulations were promulgated to meet the criteria established by the Supreme Court. See 8 C.F.R. § 241.4. Prior to the expiration of the mandatory ninety-day removal period, the district director shall conduct a custody review for an alien where the alien's removal cannot be accomplished during the prescribed period. 8 C.F.R. § 241.4(k)(1)(I). When release is denied pending the removal, the district director may retain responsibility for custody determinations for up to three months, or refer the alien to the Headquarters Post Order Detention Unit ("HQPDU") for further custody review. 8 C.F.R. § 241.4(k)(1)(ii). Once jurisdiction is transferred, an eligible alien may submit a written request for release to the

3

HQPDU.  8 C.F.R. § 241.13(d)(1).  Pursuant to 8 C.F.R. § 241.13, special review procedures are established for "those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future."  8 C.F. R. § 241.13(a).  Significantly, an alien may still be detained beyond six months "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."  Zadvydas, 533 U.S. at 701.  Id.

In the matter *sub judice*, all indications are that jurisdiction to make a determination concerning Gbondo's's custody lie with the HQCMU.  While Gbondo states that he has filed a written request for release and attaches exhibits in support of such, it does not appear that his requests were made following the expiration of the three (3) month period or that the HQCMU has ever addressed his request.  Consequently, ICE will be ordered to treat the instant petition as a request for release under 8 C.F.R. § 241.13.  An appropriate order accompanies this memorandum.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AIAH MOMOI GBONDO,** | : | **CIVIL NO. 1:CV-11-1016** |
| Petitioner, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| **ATTORNEY GENERAL OF THE** | : | |
| **UNITED STATES, et al.,** | : | |

## ORDER

**AND NOW,** this 21st day of June, 2011, for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

1. The petition for writ of habeas corpus is **denied**.

2. As of the date of this order, ICE shall treat the petition for writ of habeas corpus as a request for release under 8 C.F.R. §§ 241.4 and 241.13. ICE shall provide Petitioner with a response to his request within thirty (30) days.

3. The Clerk of Court is directed to serve a copy of this Memorandum and Order on the Respondents and the United States Attorney.

4. The Clerk of Court is directed to **close this case**.

                                               S/ Yvette Kane
                                               YVETTE KANE, Chief Judge
                                               Middle District of Pennsylvania